IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| v.    : | Docket No.: 1:12CR116 |
| : | |
| BRETT AMENDOLA    : | |
|     Defendant.    : | |

OMNIBUS MOTION ON PETITION FOR SUPERVISED RELEASE

Comes now, BRETT AMENDOLA, Defendant in the above styled case, by and through Counsel, pursuant to this Court's Order of November 27, 2020 and hereby files this Omnibus Motion in response to the government's Petition to Revoke Mr. Amendola's Supervised Release.

As the government pleadings recite, Mr. Amendola previously pleaded guilty to a one-count criminal information charging him with wire fraud in violation of 18 U.S.C. § 1343 and was sentenced to, *inter alia*, eighty-four months' imprisonment, three years' supervised release, and restitution in the amount of $2,812,355. The sentence of imprisonment was later reduced to sixty-three months pursuant to the government's Rule 35 Motion. Mr. Amendola's conditions of supervised release contain the standard prohibition against committing another crime, be it federal, state or local.

The primary purpose of these supervised release conditions is to facilitate Mr. Amendola's integration back into the community. The primary purpose is not, and cannot be, a mechanism by which to prosecute and punish him for new criminal conduct. *See* the report of the United States Sentencing Commission on Supervised Release, July 2010. *See* also the legislative history of 18 U.S.C. § 3583, explaining that the goal of supervised release is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly

short period in prison for punishment or other purposes but still needs supervision and training programs after release (S. Rep. No. 98-225 at 124 (1983)).

Though the Petition alleges numerous violations, the government's central claims, as set forth in its 56-page affidavit and its Notice of Supervised Release Violations, are that Mr. Amendola is engaged in entirely new and unrelated criminal conduct: a fraudulent Ponzi scheme in violation of 18 U.S.C. §§ 1341 & 1343 and bank fraud in connection with the Payroll Protection Program in violation of 18 U.S.C. § 1341.

As Mr. Amendola previously noted in his Motion to Continue or Hold in Abeyance, Supervised Release is neither intended nor designed to act as a substitute for formal criminal indictment and prosecution of new and substantial federal crimes, such as the ones alleged in the Petition currently before the Court. Accordingly, Mr. Amendola is again moving to this Court to hold the Petition in abeyance to allow the government the opportunity to formally charge Mr. Amendola with these new fraud charges, should it decide to do so. Should Mr. Amendola be indicted, tried and convicted of the fraud allegations, further hearing on the Petition may be unnecessary. Should Mr. Amendola be acquitted, the Court will have before it a full and fairly developed record upon which to make a finding. This approach has the benefit of insuring the Petition remains justiciable while also recognizing Mr. Amendola's due process rights to a fair resolution of the allegations against him. It is also the approach most consistent with the underlying purpose of Supervised Release in the first instance.

Should the Court be inclined to deny this request, Mr. Amendola moves the Court for the following relief in the alternative.

I. MR. AMENDOLA REQUESTS A JURY TRIAL ON THE ALLEGATIONS SET FORTH IN THE PETITION

Congress created supervised release to replace parole in the Sentencing Reform Act of 1984. See Pub. L. No. 98-473, Title II, § 212(a)(2), 98 Stat. 1999 (codified as amended at 18 U.S.C. § 3583). In addition to "eliminat[ing] most forms of parole," the SRA tasked sentencing courts with overseeing defendants during their terms of supervised release. *Johnson v. United States*, 529 U.S. 694, 696–97 (2000). In this regard, if a defendant violates the conditions of his supervised release, the court may revoke the release "and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision." *Id.* at 697 (quoting what is now 18 U.S.C. § 3583(e)(3)). *Johnson supra* makes clear, however, that postrevocation imprisonment is a "part of the penalty for the initial offense" and is not a punishment for a new offense or for the violation. *Id.* at 700. This is, of course, consistent and in accordance with Congress' intent that supervised release be a tool to facilitate Mr. Amendola's integration back into the community.

As *Johnson* presciently opined, considering postrevocation imprisonment to be a punishment for a new offense or for the violation itself —rather than as part of the penalty of the initial offense—would raise "serious constitutional questions." *Johnson*, 529 U.S. at 700. How to tell if the government is seeking postrevocation imprisonment as a punishment for the violation or new offense, rather than as a penalty of the initial offense? *United States v. Haymond*, 139 S. Ct. 2369 (2019) tells us the key factor in this determination is whether the court will be asked or expected to impose a sentence in the revocation context "as if that conduct were being sentenced as new federal criminal conduct." *United States v. Haymond*, 139 S. Ct. 2369, 2386 (2019) (Breyer, J., concurring in the judgment) (quoting U.S.S.G. ch. 7, pt. A, intro. cmt. 3(b)

(Nov. 2018). By making the new fraud charges the central theme of the Supervised Release Petition, this is precisely what the government is asking and expecting this Court to do.

"Only a jury, acting on proof beyond a reasonable doubt, may take a person's liberty." *Haymond*, 139 S. Ct. at 2369. This is the opening sentence in- and the essential holding of- *Haymond*, in which the plurality opinion and Justice Breyer's concurring opinion held that postrevocation imprisonment is unconstitutional if it resembles a punishment for a new offense. Even though *Haymond* was decided in the context of the mandatory revocation provision of § 3583(k), the reasoning nevertheless extends to supervised release violations in which there is no mandatory period of revocation because the same "serious constitutional questions" are present.

In the first instance, when postrelease revocation resembles punishment for a new offense, the punishment is no longer authorized by the jury's original verdict. This vital and indispensable connection between imprisonment and the jury is severed and the resulting sentence unlawful because *Apprendi* teaches that it is unconstitutional "to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (quotation omitted). Instead, "such facts must be established by proof beyond a reasonable doubt," *id.,* to "ensur[e] that the judge's authority to sentence derives wholly from the jury's verdict." *Blakely v. Washington*, 542 U.S. 296, 306 (2004) (describing *Apprendi*).

Further, the *Haymond* plurality explained that merely asserting that a defendant's original sentence contemplates a later revocation sentence is of no consequence. The government in *Haymond* unsuccessfully argued that Mr. Haymond's sentence for violating the terms of his supervised release "was actually fully authorized by the jury's verdict" because it was only "on

the strength of the jury's findings the judge was entitled to impose as punishment a term of supervised release," which always includes the possibility of revocation and further imprisonment. *Id.* at 2380. The *Haymond* plurality rejected this argument out of hand, pointing out that the government similarly argued that the jury verdicts in *Apprendi* and *Alleyne v. United States,* 570 U.S. 99 (2013) triggered statutes authorizing a judge to increase the defendant's sentence based only on judge-found facts. *Id.* at 2381. In those cases, "[t]his Court had no difficulty rejecting that scheme as an impermissible evasion of the historic rule that a jury must find all of the facts necessary to authorize a judicial punishment." *Id.*

Imposing a new punishment triggered by judge-found facts based only on a preponderance of the evidence also affects the fairness and integrity of judicial proceedings. As *Haymond* noted, the Framers adopted the Fifth and Sixth Amendments, in part, to "ensure that the government must prove to a jury every criminal charge beyond a reasonable doubt." *Haymond*, 139 S. Ct. at 2376 (plurality opinion). Of particular note, the plurality specifically found that "[o]ur precedents, *Apprendi* . . . and *Alleyne* included, have repeatedly rejected efforts to dodge the demands of the Fifth and Sixth Amendments by the simple expedient of relabeling a criminal prosecution a 'sentencing enhancement' [or in this case a 'revocation']." *Id.* at 2379.

Lastly, the availability of a remedy that does not require postrelease confinement is constitutionally insufficient to overcome the impermissibility of judicial factfinding in revocation hearings concerning new criminal conduct. The possibility of a departure did not save the mandatory sentencing guidelines from the holding in *Booker*, just as the existence of a "safety valve" did not save mandatory minimum sentences from the holding in *Alleyne. See e.g. Booker,* 543 U.S. at 234 ("The availability of a departure in specified circumstances does not avoid the

constitutional issue."). The same holds true here: the fact that the Court may opt not to sentence Mr. Amendola to a period of incarceration is an insufficient remedy to the constitutional errors.

In short, *Apprendi, Johnson*, and *Haymond*, when viewed together, demonstrate that any judicial factfinding which triggers the possibility of punishment for new criminal conduct is unconstitutional because it is in essence a sanction for the new offenses. *Haymond*, 139 S. Ct. at 2378 (plurality opinion) (emphasis added); *see id.* at 2386 (Breyer, J., concurring in the judgment) (holding "§ 3583(k) more closely resemble[s] the punishment of new criminal offenses" (emphasis added)). *Haymond* is, in fact, the logical continuation of the reasoning in both *Apprendi* and *Johnson*. A sentencing which resembles punishment for a new offense is unconstitutional absent a jury trial and facts found beyond a reasonable doubt. In turn, ensuring that sentencing does not resemble a judicial punishment for a new offense avoids the serious constitutional questions to which *Johnson* alluded and which are raised above.

In today's modern supervised-release context, allowing the prosecution of Mr. Amendola's entirely new criminal conduct through a supervised release hearing requiring proof by only a preponderance of the evidence would, without question, permit the government to secure a new punishment against him based on a lower standard of proof via the simple expedient of relabeling the new criminal prosecution a "revocation." *See Haymond*, 139 S. Ct. at. 2381 (plurality opinion) (describing revocation hearings). *Apprendi, Johnson*, and *Haymond* makes clear that this would be in violation of the Fifth and Sixth Amendments.

II.  ANY SUBSEQUENT PROSECUTION ON THE SAMES CHARGES WILL BE BARRED BY DOUBLE JEPOARDY

The Fifth Amendment's Double Jeopardy Clause prohibits a person from being prosecuted twice for the same offense. The Supreme Court, *in Blockburger v. United States*, explained that two crimes are punishment for the "same offense" if all of the elements of one crime are part of the other crime. 284 U.S. 299, 304 (1932).

It is unquestionably the situation in the instant case that the underlying fraud allegations in the Supervised Release Petition are identical to the fraud allegations the government intends to indict, with identical offense elements. *Johnson supra*, in anticipation of this exact situation, observed "[W]here the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense." *Johnson supra* at 700–01.

According to *Blockburger*, Mr. Amendola is facing prosecution twice for the same offenses and as noted above, the government is seeking precisely what the Constitution does not permit: punishment for Mr. Amendola's new criminal violations in the guise of punishment for his initial offense. Any subsequent prosecution should therefore be barred by Double Jeopardy under both *Blockburger* and *Johnson*.

III.  MR. AMENDOLA OBJECTS TO THE GOVERNMENT'S USE OF HEARSAY

Revocation hearings are less formal than trials of guilt, where "the full panoply of rights due a defendant" are in effect. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Nonetheless, trials and revocation hearings are similar in that the end result may be a loss of liberty. Accordingly, some due process rights apply. *Id.* at 487–88.

In *Morrissey*, the Supreme Court explicitly identified "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)" as one of several "minimum requirements of due process" that apply to revocation hearings. *Id.* at 488–89. This requirement is also formalized in Federal Rule of Criminal Procedure 32.1, which reads that defendants are entitled to "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C).

In *United States v. Doswell*, 670 F.3d 526, 530-31 (4th Cir. 2012), the Fourth Circuit set forth a balancing test governing the application of Rule 32.1(b)(2)(C). "Rule 32.1(b)(2)(C) specifically requires that, prior to admitting hearsay evidence in a revocation hearing, the district court must balance the releasee's interest in confronting an adverse witness against any proffered good cause for denying such confrontation." *Id.* at 530. The Fourth Circuit noted that the reliability of the evidence is one "critical factor in the balancing test under Rule 32.1." *Id.* at 531. However, as the Seventh Circuit described, "reliability cannot be the beginning and end of the 'interest of justice' analysis." *United States v. Jordan*, 742 F.3d 276, 280 (7th Cir. 2014) (joining the Fourth Circuit in adopting a balancing test for hearsay evidence in revocation hearings). Therefore, "[p]ut simply, unless the government makes a showing of good cause for why the relevant witness is unavailable, hearsay evidence is inadmissible at revocation hearings." *United States v. Ferguson*, 752 F.3d 613, 617 (4th Cir. 2014).

Accordingly, before the government can rely on hearsay in the instant case, this Court must independently make two findings: (1) the hearsay testimony is reliable and (2) the government has made a good cause showing why each relevant witness is unavailable. Mr. Amendola objects to the use of hearsay evidence in the absence of these two judicial findings.

WHEREFORE, the premises considered and such other matters as may become evident at a hearing hereon, which hearing is hereby requested, the defense requests this Court to grant the relief sought and such further relief as in the cause is deemed just.

Respectfully Submitted,

BRETT AMENDOLA
By Counsel

_____/s/_____
CHRISTOPHER AMOLSCH
VSB #43800
12005 Sunrise Valley Drive
Suite 200
Reston, Virginia 20191
703.969.2214 (Phone)
703.774.1201 (Fax)
chrisamolsch@yahoo.com (email)
Counsel for Mr. Amendola

CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of December 2020 I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record.

_____/s/_____
CHRISTOPHER AMOLSCH
VSB #43800
12005 Sunrise Valley Drive
Suite 200
Reston, Virginia 20191
703.969.2214 (Phone)
703.774.1201 (Fax)
chrisamolsch@yahoo.com (email)
Counsel for Mr. Amendola